**AMERICAN TEACHERS LIFE INSURANCE COMPANY, Appellant,**

v.

**Anthony R. BRUGETTE, Appellee.**

**No. 09–85–236–CV.**

Court of Appeals of Texas, Beaumont.

Sept. 11, 1986.

Rehearing Denied Oct. 1, 1986.

R. Michael Smyrl, Pasadena, for appellant.

John H. Seale, Jasper, for appellee.

## OPINION

BROOKSHIRE, Justice.

The Appellee pleaded that he was in the employment of Hydro Carbon Field Service ["Hydro Carbon"] and he sustained a severe, total, permanent, and disabling personal injury on December 20, 1984, while a policy of accident insurance was in full force. Hydro Carbon arranged for an insurance policy to pay disability benefits for employees who might receive injuries while in its employment. The policy was issued by American Teachers Life Insurance Company.

Brugette pleaded that he was a third party beneficiary under the said policy, and that he was entitled to sue on such contract for the scheduled principal sums of the said policy, the highest recoverable amount being $300,000. The Appellee pleaded he sustained an injury to his neck, left shoulder, arm and body generally. He also pleaded for medical expenses up to $5,000 as well as reasonable attorney's fees, plus 12% for penalty [damages].

In capital letters, on the front page, the policy provides:

"BASIC AGGREGATE
AMOUNTS PAYABLE

"1. $20,000 MAXIMUM BENEFIT FOR ANY ONE ACCIDENT (See Section's [sic] 1, 2, 3 and 4)

"2. $15,000 PRINCIPLE SUM (See Section 1)

"3. $15,000 TOTAL DISABILITY (See Section 2) Weekly Benefit $200.00

"4. $5,000 HOSPITAL & MEDICAL CARE EXPENSE (See Section 3)

"5. $1,000 DENTAL SERVICES (See Section 4)

"6. $300,000.00 Optional Additional Benefit Rider (See Rider) Weekly Benefit $200.00

"Where 'None' appears in the above schedule, the corresponding item is not provided by the policy."

In a juried proceeding, the jurors found that Appellee had sustained an accidental bodily injury on or about December 23, 1984, resulting in total disability for 19 weeks. By special verdict, it was determined that the necessary medical expenses required as a result of the injury were $512.25 and that a reasonable attorneys' fee was $3,362.80. By the judgment, the trial court ruled that the plaintiff was entitled to recover $4,312.25, plus 12% thereon in the amount of $517.17 in accordance with *TEX.INS.CODE ANN. art. 3.62* (Vernon 1981).

### Appellee's Testimony

The Appellee testified that he purchased a policy of accident insurance from the Appellant although he didn't independently pay the premiums directly; the premiums were paid and they were deducted from Brugette's regular hourly pay, the deduction being made by his employer. Bru-

gette testified that he got hurt while unloading. He testified that the roads in Cougar Country were bad. Cougar Country is a subdivision near Buna. He was helping unload a tractor-trailer. The tractor was at an angle. Another person let the winch line down. Appellee further stated: "as the winch line came out, the winch line went over the right rear fender of the tractor, the truck, and then the momentum carried [sic] it and turned it over in the ditch." A wheel had fallen off and that's how he sustained his injury. The injury happened when he was trying to get the maintainer in upright position, and putting the wheel and tire back on the maintainer. He said he had an injury to his body, mainly to his neck and shoulders. He said he never had trouble with his neck and shoulders before this December, 1984, injury.

He said he went to Dr. Tan the next day. Dr. Tan was a female doctor. She gave him some medication. Dr. Tan prescribed a cervical collar or neck brace.

He claimed that many of the crew for Hydro Carbon did not work in January because the weather was bad. It was not pipelining weather. He said he was not able to work after February and he had to leave the job and employment. He said he was not even able to do the supervisory work.

### Dr. William A. Wood

Dr. William A. Wood, who practices in Jasper, had a background of being a teaching professor in a medical school in Nevada. He came to Jasper in 1979. He had experience in emergency room work at Barton Memorial Hospital, South Lake Tahoe. He stated that Tahoe was a ski and resort area. He had the opportunity to examine and evaluate people with injuries, usually sport related injuries. He said he was an Associate Professor of Family Practice at the University of Texas Health-Science Center in San Antonio and also at the Medical Branch in Galveston. He is connected with a clinic in Jasper.

He first saw Plaintiff on February 21, 1985. He took a history. The history reflected that Appellee was working for Hydro Carbon Field Service, lifting a "container" when it fell over. While Appellee was attempting to hold it back, he had a very severe pain in his neck. The pain became worse when he continued to work. Over the next several weeks, he had difficulty. When he was lifting a large six-inch pine log over his shoulder, Appellee had severe pain in the shoulder radiating up into his neck. He was then not able to continue working. He visited Dr. Tan in the emergency room at Kirbyville and was given pain medication. Subsequently, he went to see a Dr. Wynne in Buna, who also gave him medication for pain.

He gave a history that he had sustained his injury on December 20, 1984. Dr. Wood conducted a physical examination. The positive, objective findings were limited to his neck and shoulder. He had a very rigid neck with marked spasm in the muscles of his neck in the mid-cervical area, which radiated down into the left trapezius muscle.

Dr. Wood, in his opinion, stated that on February 21, 1985, Brugette would not be able to go out and do any kind of oil field work. He testified that the Appellee was totally disabled based on reasonable medical probability, in his opinion. He said, based on reasonable medical probability, he presumed that same condition had existed since he sustained the injury in December, 1984.

He next saw his patient on March 7, 1985. Appellee said his pain was a little better but still had spasm and restricted range in the motion of his neck. He also had some low and mid-back pain. The doctor thought there was no other injury involved. He thought it was "referred pain". The patient still had headaches, but they were diminished. The doctor prescribed an analgesic for pain and also Norgesic Forte, which is a muscle relaxant. These prescriptions were refilled. The doctor felt that he was able to go back to work on or about May 7, 1985. The doctor was asked if, in his opinion, with reference to the term total disability, that he was to assume that

the it meant an incapacity that prevents a person from performing all of the substantial and material duties pertaining to his occupation. The doctor understood that and agreed. Then the doctor expressed an opinion, based on reasonable medical probability, that Anthony Brugette had been totally disabled as defined, and set out in the policy, beginning sometime in late December, 1984, up to and until May 7, 1985.

We think the weight and credibility to be given this doctor's testimony was within the province of the jury under our well-established standards, both at the trial level and at the appellate level.

The doctor also expressed his opinion in the affirmative on certain pharmacy bills, medicine bills and doctor's fees that he said were necessary and reasonable, and resulted from the December, 1984, injury.

■ Of course, the evidence was in conflict on the major issues in the case and if the evidence, itself, was not in conflict certainly the inferences therefrom were; but we think each issue that was passed on by the jury was a valid jury issue and that there was some evidence to sustain the special answers or special verdict findings that the jury made and returned in this cause. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Potter v. Garner*, 407 S.W.2d 537 (Tex.Civ.App.—Tyler, 1966, writ ref'd n.r.e.); Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error", 38 TEXAS L.REV. 361 (1960); Garwood, *"The Question of Insufficient Evidence on Appeal"*, 30 TEXAS L.REV. 803 (1952).

The Appellant brings forth 15 Points of Error. The first group contends that, as a matter of law, Brugette could not recover the benefits of the policy since the insurance contract was not in force when the 19 weeks of total disability, or part thereof, transpired and, as a corollary, that there was no evidence that the loss or injury or duration of disability occurred while the policy was in force. We conclude that the record shows that the policy of insurance was issued on October 1, 1984. There is

probative evidence that the injury occurred on or about December 20th or 23rd, 1984, and the policy was in force until January 1, 1985. But the carrier argues that the accidental insurance policy provides benefits only while the policy is in actual force. The Appellee did recover judgment for weeks of disability subsequent to January 1, 1985, the date the policy lapsed. The policy reads:

"The person named as insured in the Policy Schedule is referred to as the Insured or you. We have issued this Policy to you. *While it is in force, we will pay you benefits for loss or total disability as a result of accidental injury.*

"While this Policy is in force, *we insure you against loss resulting from medical expenses incurred as a result of injury....*" (Emphasis added)

### Construction of the Policy

■ Anthony R. Brugette is named as the insured. It is reasonably clear that the policy of accident insurance lapsed on December 31, 1984, or January 1, 1985. The jury found total disability sustained by Appellee running beyond January 1, 1985. We disagree with the carrier that the lapse of the policy would cut off the future disability benefits, provided that the injury occurred and was sustained while the policy was in full force and effect. We conclude this is the only reasonable, logical and fair construction to give to the policy. The policy was subject to cancellation at the option of the company by 30 days written notice. It is not inconceivable that if there were some tremendous losses that occurred unquestionably and properly during the first operative, effective month of the policy, which disabilities were total and permanent for life; then, under the construction the carrier would have us apply, American Teachers Life Insurance Company could simply cancel the policy after notice and not pay the basic benefits or the aggregate amounts payable as set out in the contract.

There is also a special provision of the policy entitled "Termination" which states,

in substance, that the policy shall terminate upon the default in the payment of any required premium and also "[t]he Company may terminate this Policy on any premium due date by giving written notice to the Insured at least thirty (30) days in advance". We hold if the injurious accident occurs while the policy is in force, then the carrier must pay to the insured the scheduled benefits, even though the weeks of total disability occur and extend after the policy is cancelled for either non-payment of premiums or by the 30–day written notice of cancellation exercised by the carrier.

## The Medical Expenses

■ The carrier did receive an emergency room bill in which the date of the services rendered in the emergency room was December 23, 1984. The company concedes, in their brief, that the contract provides:

> "While this policy is in force, we insure you *against loss resulting from medical expenses incurred as a result of injury.*" (Emphasis ours)

These medical expenses were found, by the jury, to be a result of the injury which happened on December 20th or 23rd of 1984. The policy was in force on those dates. Since the policy insured the Appellee against loss, which resulted from medical expenses which had to be incurred as a result of the injury, we determine that they are properly recoverable in this suit.

But we think the more decisive section provides that:

> "(2) Medical Services: *The usual and customary charge* made by a licensed physician or surgeon *for the necessary treatment of 'such injuries'.*" (Emphasis ours)

We conclude the Appellee had a right to rely on Section 3, entitled "Hospital and Medical Care Expense", and especially subsection (2) and (3) thereof, and he could recover under the same. This provision was more specific than the general language argued in the Appellant's brief.

## Are Benefits for Total Disability Recoverable After Policy Canceled?

■ Arguendo, an insured or a third party beneficiary insured could be seriously injured while the policy is in full force resulting in total disability for life. We are unwilling to hold that the insured would have to continue to pay all the premiums during his total disability for the rest of his life. This policy clearly provides that, under certain circumstances, it will pay $200 per week, not to exceed $300,000 for 1500 weeks. We conclude that it would be unreasonable to require a totally disabled man to pay the premiums for 1500 weeks.

## The Notice Provisions

■ The carrier then contends that it should have prevailed in a motion for instructed verdict because the Appellee failed, according to the company, to give a notice of his claim within 30 days; and thereafter, he failed to file a proof of loss. The Appellee contends that the insurance policy involved here provided that the company, upon any notice of a claim, would be obligated to furnish to the claimant the proof of loss forms. He also argues that if such forms were not sent or furnished, the claimant is deemed to have complied with the policy requirements as to proof of loss. The record in this case tends to show that the insurance company received some type of notice of claim on January 21, 1985. The notice of the injury was received by way of an emergency room bill, the date of the services thereon having been December 23, 1984. There is also evidence that the claimant never received any proof of loss forms.

We notice that in the "Definitions", under Section 9, injury is defined:

> "1. INJURY. Injury means accidental bodily injuries sustained by you. The injury must be the direct cause of the loss. The injury must be independent of disease, bodily infirmity or any other cause. *The injury must occur after the Effective Date of the policy.*

*The injury must occur while the policy is in force."* (Emphasis ours)

On the notice of claim, the contract provides, under Section 11:

"5. NOTICE OF CLAIM: Written notice of claim must be given to the Company within thirty days after the occurrence or commencement of any loss covered by the Policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the insured or the beneficiary to the Company at Humble, Tx. *with information sufficient to identify the insured shall be deemed notice to the Company."* (Emphasis ours)

On claim forms, the policy provides, under Section 11:

"6. CLAIM FORMS: The Company, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen days after the giving of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss...."

We overrule these points of error under this record.

### The Attorney's Fee and the 12% Penalty Issues

■ Next, the company argues that, as a matter of law, no attorney's fee should be allowed, nor should 12% penalty be awarded, because the Appellee failed to make demand pursuant to *TEX.INS.CODE ANN. art. 3.62* (Vernon 1981). This *art. 3.62* provides, in part:

"In all cases where a loss occurs and the ... accident insurance company ... liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees...."

Appellee's attorney wrote the carrier on or about February 19, 1985, informing the carrier company of his representation. Since no reply was received, the suit was filed on April 2, 1985. Thereafter, a demand was made on the Appellant's attorney by the Appellee's attorney for payment of weekly disability benefits and for medical benefits; but no payments have been made by the Appellant as of this date. We decide *art. 3.62* was complied with. We conclude that this point has been determined in this appellate district by *Continental American Life Insurance Co. v. McCain,* 412 S.W.2d 666 (Tex.Civ.App.—Beaumont 1967). *McCain, supra,* was later considered in 416 S.W.2d 796. The case of *McCain* was reversed in part, but on other grounds.

To make demand for attorney's fees and the 12% penalty, it is not necessary that any particular form of demand be made. In fact, the wording of the attorney's letters in the case sub judice, as well as other evidence, is similar to the demand made in *Continental American Life Insurance Co. v. McCain, supra.* We find, in *National Life & Accident Ins. Co. v. Dove,* 141 Tex. 464, 174 S.W.2d 245 at page 247 (1943):

" ... All that is required is the assertion of the right under the contract and a request for compliance therewith...."

An unequivocal assertion of rights were made in this case. Liability has been established. Hence, the Appellee was entitled, under well-settled, decisional law, to the 12% penalty and to the reasonable attorney's fees.

### The Refused Special Issues

■ Nextly, the company contends that the trial court erred when it refused to submit these special issues to jury when such inquiries were supported affirmatively by pleadings. One special issue was whether Brugette gave the insurance company written notice of claim within 30 days after the occurrence. Another special issue was whether Brugette gave the company written proof of loss within 90 days after the occurrence. The predicate on the

3rd requested, but refused, special issue is not complete. Another issue asked if Brugette made a demand to pay his claim more than 30 days prior to filing his suit. We hold that these were only evidentiary issues. They were not in substantially correct form as an ultimate issue.

We conclude that the appropriate ultimate issue was a simple issue inquiring if the claimant acted as a resonably prudent person under the same or similar circumstances would have acted with reference to the filing of the notice of the claim and proof of loss to the Appellant, followed by an answer of "We do" or "We do not". We find no reversible error in the refusal of this series of issues. The logic and rationale of our holding on this point is definitely undergirded and strengthened by the recent holding of the Texas Supreme Court in the case of *Island Rec. Dev. v. Republic of Texas Sav.*, 710 S.W.2d 551 (Tex.1986). This was a non-negligence case. *Island Rec. Dev., supra*, gives discretion to the trial judge to refuse this series of 6 evidentiary issues. We overrule this point of error.

### The "No Evidence" and "Insufficient Evidence" Points

Then, the Appellant argues that there was no evidence, or insufficient evidence, to support the jury's finding that Appellee sustained an injury on or about December 23, 1984. We have reviewed the record, as to both these points of error, in accordance with the well-recognized standards of appellate review. We overrule the same.

Appellant has the same contentions, concerning the jury's findings in special issues 2 and 3, pertaining to total disability and the duration thereof. After reviewing the record, we overrule the same.

On the same basis of "no evidence" and "insufficient evidence", the Appellant attacks the $512.25 medical expenses as well as special issue No. 5, covering attorney's fees. Under this record, those points are not sustainable.

We overrule all of the Appellant's points of error and affirm the judgment below.

AFFIRMED.